UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOUIS WRIGHT, individually;

Plaintiff,

-v-

No.
Hon.

BUNNIE L. MUELLER, in his individual capacity;

Defendant.

---

**COMPLAINT AND JURY DEMAND**

NOW COMES the Plaintiff, LOUIS WRIGHT, individually, by and through his attorneys, MUELLER LAW FIRM, by WOLFGANG MUELLER and JOHN WM. MARTIN, JR., and files his Complaint against the Defendant, BUNNIE L. MUELLER ("MUELLER"), in his individual capacity, in this civil action, stating unto this Court as follows:

1. This is an action for damages brought pursuant to 42 U.S.C. §§1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, against Defendant MUELLER.

2. Jurisdiction is founded upon 28 U.S.C. §1331 and 28 U.S.C. §1343 and pendent jurisdiction of this Court to hear closely related state law claims.

3. Forum is proper based on the situs of the incident, which occurred in

the City of Albion, Calhoun County, Michigan, within the Western District of Michigan.

4. At all pertinent times Plaintiff, LOUIS WRIGHT, was a United States citizen.

5. At all pertinent times, MUELLER was employed as a police officer by the ALBION PUBLIC SAFETY DEPARTMENT ("APSD") and was acting under color of law.

6. MUELLER, as a sworn police officer, had taken an oath, the Law Enforcement Code of Ethics, that stated in pertinent part: *"As a sworn police officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice."*

**GENERAL ALLEGATIONS**

7. In the early morning hours of January 18, 1988, an 11-year-old girl was raped by an unknown man in the City of Albion, Michigan. The assailant allegedly broke into the home by cutting the screen from the side screen door and entering through an unlocked door into the kitchen.

8. The victim was transported to the local hospital where a sexual assault kit was collected.

9. An off-duty police officer for the Albion Public Safety Department who lived on the next block reported that he saw Plaintiff walking in the neighborhood approximately four to five hours before the crime.

10. Based on the off-duty officer's report, Plaintiff was sought for questioning. Defendant Mueller and another detective brought Plaintiff to the police department where he was interrogated by Mueller. The interrogation was not recorded.

11. Defendant, Mueller, was the lead detective in the case. He knew Plaintiff and knew he was emotionally unstable.

12. Preying upon Plaintiff's mental condition, Mueller lied and told Plaintiff that he had been seen near the victim's house around the time of the crime, that he had been seen prowling around the house for three nights in a row, and that his boot prints were identical to prints found at the crime scene, when it was obvious to a casual observer that Plaintiff's boots did not match the boot prints at the crime scene. Each statement was untrue.

13. Mueller also told Plaintiff that if he confessed to the crime, Mueller would see that he got a lighter sentence but if he denied the crime, Mueller would see to it that he never walked free.

14. After hours of interrogation, Mueller fabricated a "confession," claiming Plaintiff told him facts that only the perpetrator would know, as the crime

had not been made public by the time of Plaintiff's 3:45 p.m. interrogation.

15. Plaintiff's alleged confession was not recorded in any manner. There was no written confession or even a typed confession that was signed by Plaintiff. There was nothing to corroborate the detective's naked assertion that Plaintiff confessed to the crime and included facts that only the perpetrator would have known.

16. Mueller's report of the "confession" claimed that Plaintiff relayed facts that only the police or true perpetrator would have known, including that the back screen door had been cut to gain access to the unlocked inside door, that Plaintiff found the girl in a bedroom on the right side of the main hallway, that the victim was a young white girl, and that her mother's blue panties had been taken from a clothing basket in the living room.

17. Mueller knew that Plaintiff could not have been the perpetrator because he asked Mueller "who was raped," causing Mueller to tell him about the victim. Plaintiff's alleged "confession" also incorrectly claimed that he "had sex" with the girl in her bedroom, when the rape actually occurred in the living room.

18. Plaintiff did not make any of the statements attributed to him in Mueller's written report or oral representations to the Prosecutor or any judge.

19. On September 30, 1988, the trial judge ruled that Plaintiff's "confession" was voluntary and would be admissible at trial. Because of the

judge's ruling, Plaintiff pled "No contest" to two counts of Criminal Sexual Conduct – 1st degree, and one count of Breaking and Entering with Intent, a mere forty minutes after the trial judge's decision.

20. Plaintiff was coerced by Defendant's fabricated confession and false statements into choosing between exercising his Fifth Amendment right to remain silent, leaving Mueller's representations about Plaintiff's "confession" unrebutted, or suffering the consequences of testifying on his own behalf and being subjected to a skewering cross-examination by an experienced prosecutor while facing a sentence of up to life in prison.

21. Plaintiff attempted to withdraw his No Contest plea at sentencing, claiming that he was being framed by the police. After the judge threatened to place a gag in Plaintiff's mouth, the judge sentenced him to the custody of the Michigan Department of Corrections for a period of 25-50 years for the two counts of Criminal Sexual Conduct and 6-15 years for Breaking and Entering.

22. After years of unsuccessful appeals, Plaintiff's case was undertaken by the Cooley Innocence Project at Western Michigan University in 2013. After years of trying to secure DNA evidence from the case, the Cooley IP submitted their investigative findings to the newly formed Conviction Integrity Unit (CIU) of the Michigan Attorney General's Office, headed by Director Robyn Frankel.

**NEW EVIDENCE DISCOVERED POST-CONVICTION**

23. New evidence not introduced at Plaintiff's criminal proceedings included DNA results from tests performed by the MSP that excluded Plaintiff as the contributor. As the 11-year-old victim had not had sexual intercourse and there was only a single male contributor to the DNA sample, Plaintiff could not be the contributor and, consequently, the perpetrator.

24. New evidence not introduced at Plaintiff's criminal proceedings included a January 26, 1988, MSP report regarding plaster casts of footprints found at the crime scene and Plaintiff's boots. The MSP report concluded that *"the casts could not have been made by the suspect's boots."* The report directly contradicted the OIC's report that Plaintiff was arrested on the day of the crime wearing boots "with a sole pattern identical to that at the scene."

25. New evidence not introduced at Plaintiff's criminal proceedings included fingerprint results of a fingerprint lift from the telephone base/charger that had been moved by the perpetrator that did not match Plaintiff, directly contradicting the OIC's report that stated *"[l]atent Fingerprint Examination of the exterior and interior of the residence was made with negative results."*

26. Plaintiff was not present at the scene of the crime and did not commit the horrific crime.

27. Because of new evidence discovered in the CIU investigation and the

work of the Cooley IP, an order was entered on November 9, 2023, in Calhoun County Circuit Court vacating Plaintiff's conviction and dismissing the case. The Stipulation states, in pertinent part: *"New evidence demonstrates that Louis Wright was not the perpetrator of the crimes and was not an accessory or accomplice to the acts that were the basis of the conviction. The People believe there is clear and convincing evidence establishing the Defendant's innocence."*

28. Vacatur of Plaintiff's conviction and dismissal of criminal charges constitutes a favorable termination of Plaintiff's criminal case. *Thompson v. Clark*, 596 U.S. 36, 49; 142 S.Ct. 1332; 212 L.Ed.2d 382 (2022) (For favorable termination, "[a] plaintiff need only show that the criminal prosecution ended without a conviction.").

29. At the time of his release, Plaintiff had been wrongfully seized and deprived of liberty from the date of his arrest on January 18, 1988, to the date charges were dismissed on November 9, 2023, a total of incarceration in jail and state prison for **13,080 days, a total of 35 years, 9 months and 23 days**.

30. Mueller's illegal acts were the direct and proximate cause of Plaintiff's No Contest plea and subsequent deprivation of liberty. Plaintiff suffered the following injuries and damages set forth below:

a. Suffering a deprivation of liberty by being wrongfully incarcerated and imprisoned for a period of almost 36 years;

b. Severe emotional distress for the period from his arrest to the present, including, but not limited to, the emotional distress of being charged and convicted of crimes the Defendant knew he did not commit;

c. Physical manifestations of emotional distress including, but not limited to, sleeplessness, irritability, loss of appetite, headaches, and other symptoms;

d. Fright, shock, indignity, humiliation, outrage, and embarrassment of being wrongfully charged and imprisoned for criminal sexual assault of a minor and being labeled a pedophile in prison and in the community;

e. Loss of enjoyment of daily activities;

f. Not being able to attend the funerals of family members;

g. Restricted and/or complete loss of all forms of personal freedom and physical liberty, including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, personal fulfillment, sexual activity, family relations, recreational activities, and personal expression;

h. Inadequate health care for his pre-existing medical conditions and inadequate treatment for serious health conditions that developed while in prison;

i. Suffering physical and sexual assaults in prison;

j. Loss of economic benefits from employment, including wage loss and loss of future Social Security benefits;

k. Many of Plaintiff's injuries and damages are likely to be permanent;

l. Other damages which may be revealed through discovery.

## COUNT I

## VIOLATION OF 5TH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION BY DEFENDANT MUELLER

31. Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

32. At all times, Plaintiff had a constitutional right, guaranteed by the 5th Amendment, to be free from self-incrimination.

33. Defendant, Mueller, violated Plaintiff's constitutional rights described above by the following misconduct:

a. Fabricating Plaintiff's false confession, as described above;

b. Fabricating statements about the evidence that were clearly contradicted by the evidence itself; and,

c. Other means, including illusory promises of leniency if he confessed, to cause Plaintiff to enter into a plea agreement with the prosecutor.

34. Plaintiff's 5th Amendment right not to be a witness against himself by use of a fabricated confession was clearly established long before January 18, 1988. *See United States v. Miranda*, 384 U.S. 436, 448; 86 S.Ct. 1602 (1966) ("As we have stated before, this Court has recognized that coercion can be mental as well as physical, and that the blood of the accused is not the only hallmark of an unconstitutional inquisition.") (internal citations and quotations omitted).

35. Plaintiff was coerced by Defendant's fabrication into choosing

between exercising his constitutional right to remain silent, which would have left Mueller's representations about Plaintiff's "confession" unrebutted, or suffering the consequences of testifying on his own behalf and being subjected to a skewering cross-examination by an experienced prosecutor.

**COUNT II**

**4th AND 14th AMENDMENT "FABRICATION OF EVIDENCE" BY DEFENDANT MUELLER**

36. Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

37. At all times, Plaintiff had a constitutional right, secured by the 4th Amendment, not to be seized and deprived of liberty because of fabrication of evidence by a government officer acting in an investigative capacity. *See Jackson v. City of Cleveland*, 925 F.3d 793, 816 (6th Cir. 2019).

38. Plaintiffs' constitutional right to be free from arrest and prosecution based upon fabrication of evidence by a police officer acting in a governmental capacity to manufacture probable cause for an arrest was clearly established before January 18, 1988, the earliest possible date of police misconduct. *Jackson*, 925 F.3d at 825 (6th Cir. 2019) (fabrication of evidence claim clearly established in 1975).

39. Mueller deliberately and knowingly fabricated evidence to manufacture probable cause for an arrest warrant and to later secure Plaintiff's

conviction, including:

a. A "confession" that relayed details of the crime that Plaintiff did not and could not know;

b. Falsely reporting that Plaintiff was wearing boots "with a sole pattern identical to that at the scene";

c. Falsely reporting that "[l]atent Fingerprint Examination of the exterior and interior of the residence was made with negative results" when, in fact, there had been a fingerprint lifted from a telephone that had been moved and the fingerprint did not match Plaintiff;

d. Falsely reporting that during each of the three nights prior to the assault, an off-duty Albion police officer had witnessed Plaintiff in the 400 block of Irwin Ave., "dressed in the same basic clothes as described by the victim"; and

e. Other fabrications of evidence that will be discovered in the course of this litigation.

40. Defendant's fabrication of evidence caused the initiation and continuation of criminal proceedings against Plaintiff and was used to deprive Plaintiff of his liberty.

## COUNT III

## FEDERAL MALICIOUS PROSECUTION BY DEFENDANT

41. Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

42. At all times, Plaintiff had a constitutional right, secured by the 4th and 14th Amendments, not to be seized and deprived of liberty as a result of fabricated

evidence and knowingly or recklessly made false statements or material omissions by a police officer in order to manufacture probable cause for an arrest and continued detention.

43. Defendant influenced or participated in the initiation of criminal prosecution when he deliberately fabricated an unreliable "confession" from Plaintiff, which was material to a finding of probable cause for arrest and continued detention and Plaintiff's ultimate conviction.

44. Defendant further influenced or participated in the initiation of criminal prosecution when he deliberately and knowingly made false statements and material omissions of evidence in his police report and testimony to a judge in support of the arrest warrant, which were material to a finding of probable cause and Plaintiff's ultimate arrest and continued detention.

45. But for Defendant's fabricated evidence and deliberate false statements and material omissions in reports and sworn testimony before a magistrate judge, probable cause would have been lacking; such conduct constituting a claim of federal "malicious prosecution." *Mills v. Barnard*, 869 F.3d 472, 480 (6th Cir. 2017) ("The prototypical case of malicious prosecution involves an official who fabricates evidence that leads to the wrongful arrest or indictment of an innocent person."). *See also Franks v. Delaware*, 438 U.S. 154; 98 S.Ct. 267; 457 L.Ed.2d 667 (1978).

46. Plaintiff received a favorable termination of his criminal case on November 9, 2023, when criminal charges were voluntarily dismissed by the Calhoun County Prosecutor's Office.

47. Plaintiff's constitutional right to be free from illegal seizure and continued detention without probable cause based on fabricated evidence and false statements or material omissions by a government officer acting in an investigative capacity to manufacture probable cause for arrest and continued detention was clearly established before January 18, 1988, the earliest date for Defendant's wrongful conduct. *See Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019); *Franks*, 438 U.S. at 155-56.

**COUNT IV**

**STATE LAW MALICIOUS PROSECUTION BY DEFENDANT**

48. Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

49. The underlying criminal proceedings against Plaintiff ultimately terminated in his favor with a dismissal of the charges in state court on November 9, 2023.

50. The criminal investigation and prosecution were undertaken without probable cause or good faith and with malice. They were not undertaken with the intention of bringing the true perpetrator to justice for having committed the

alleged crime. Mueller manufactured probable cause by fabricating a confession, claiming that Plaintiff admitted to facts that he could not know because he was not the perpetrator. Mueller knew that, absent fabricated evidence, probable cause for arrest or continued detention was lacking. Mueller simply wanted to expeditiously close a heinous case of CSC of a minor.

51. As a direct and proximate result of Defendant's malicious prosecution, Plaintiff was charged and convicted of crimes he did not commit, causing him to suffer the special injuries and damages set forth above.

52. Defendant's conduct constitutes malicious prosecution under MCL 600.2907 and the common law of the State of Michigan.

## PRAYER FOR DAMAGES

WHEREFORE, Plaintiff, LOUIS WRIGHT, prays for damages against Defendant for his wrongful detention and imprisonment, in violation of the Constitution, including:

a. Past and future compensatory damages as to Defendant, MUELLER, in a minimum amount of One Hundred Five Million Dollars **($105,000,000.00)**;

b. Punitive damages as to Defendant, MUELLER, in a minimum amount of Forty-Five Million Dollars **($45,000,000.00);**

c. Reasonable attorney fees and costs pursuant to 42 U.S.C. §1988;

d. Costs and disbursements of this action pursuant to 42 U.S.C. §1920;

e. All damages allowed under MCL 600.2907 and the common law

of the State of Michigan, together with pre-judgment interest, costs and attorney fees allowed under state law; and

f. Such other and further relief that is just and proper.

MUELLER LAW FIRM

*s/Wolfgang Mueller*
WOLFGANG MUELLER (P43728)
JOHN WM. MARTIN, JR. (P42266)
Attorneys for Plaintiff
41850 W. Eleven Mile, Suite 101
Novi, MI 48375
(248) 489-9653
wolf@wolfmuellerlaw.com
john@wolfmuellerlaw.com

Dated: January 12, 2024

**JURY DEMAND**

Plaintiff demands a jury trial in this matter.

MUELLER LAW FIRM

*s/Wolfgang Mueller*
WOLFGANG MUELLER (P43728)
JOHN WM. MARTIN, JR. (P42266)
Attorneys for Plaintiff
41850 W. Eleven Mile, Suite 101
Novi, MI 48375
(248) 489-9653
wolf@wolfmuellerlaw.com
john@wolfmuellerlaw.com

Dated: January 12, 2024